**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhonda Robie, | No. CV-18-00500-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Rhonda Robie brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises four issues on appeal: 1) the Administrative Law Judge ("ALJ") applied the "light" medical-vocational rules when the "sedentary" rules more properly applied, which would have resulted in a finding of disabled under Rule 201.10; 2) the ALJ failed to account for the limiting effects of Plaintiff's right hand impairment in the residual functional capacity ("RFC") assessment; 3) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony; and 4) the ALJ failed to give reasons germane to the witness for discounting the opinion of examining chiropractor Noel Shaw. (Doc. 16).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 16, 17, & 18). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the

Court finds that this matter should be remanded for further administrative proceedings.

## I.  Procedural History

Plaintiff filed an application for social security disability benefits on July 1, 2015. (Administrative Record ("AR") 212).[1] Plaintiff alleged disability beginning on July 25, 2014 based on right ankle problems and back problems. *Id.*[2] Plaintiff's application was denied upon initial review (AR 219) and on reconsideration (AR 243). A hearing was held on August 28, 2017 (AR 168), after which ALJ Peter Baum found, at Step Five, that Plaintiff was not disabled because she could perform other work existing in significant numbers in the national economy. (AR 136). On September 27, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2019. (AR 230). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her amended AOD of April 14, 2016 and her DLI of December 31, 2019.

## II.  Factual History[3]

Plaintiff was born on April 15, 1966 making her 50 years old at the amended AOD of her disability. (AR 205). She stopped attending school in the 8th grade. (AR 382). In the past 15 years she has worked as a van driver, a house cleaner, and in retail. (AR 416).

### A.  Treating Physicians

Plaintiff was seen in 2011 for back pain (AR 486, 488, 498, 501, 510), right ankle pain (AR 520, 523, 524, 534, 539), and hand pain, swelling, tingling, and numbness (AR 493, 521, 522, 535). She continued to report right ankle pain and lower back pain in 2012. (AR 611).

In 2014 Plaintiff reported continued pain in the right ankle; new x-rays did not demonstrate any new abnormalities. (AR 554).

In 2015 Plaintiff reported chronic right foot and ankle pain and requested a referral

---

[1] Plaintiff filed several previous applications in 2014, 2011, 2008, and 2007. (AR 205–06).
[2] At the hearing before the ALJ, Plaintiff amended her AOD to April 14, 2016, her 50th birthday. (AR 128, 170).
[3] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

to an orthopedist. (AR 579). X-rays on October 27, 2015 showed post moderate degenerative joint disease moderately severe in the ankle joint. (AR 618). On November 10, 2015 Plaintiff reported worsening ankle pain, grinding, and swelling, severity level 10, aggravated by walking, standing, and climbing stairs. (AR 630). She was referred to Dr. Steck for possible total ankle arthroplasty and recommended to have a rheumatology consult. (AR 633).

An MRI of the lumbar spine on June 23, 2015 noted degenerative changes with narrowing at the L4-5 and L5-S1 disc spaces. (AR 585).

On November 13, 2015 Plaintiff reported left hip and back pain and was prescribed Flexeril and Tramadol. (AR 653, 657).

In 2015 Plaintiff was seen for right shoulder pain and weakness, duration 1 year, severity 9/10. (AR 564). She received an injection on May 12, 2015 (AR 568) and reported 50% improvement in pain after the injection but only for one week and stated Aleve helped (AR 559). An MRI on August 25, 2015 showed severe distal and insertional supraspinatus tendinosis with an 8 mm tear, mild anterior insertional infraspinatus tendinosis with a probable tear, mild subacromial-subdeltoid bursitis, and mild acromioclavicular joint osteoarthritis. (AR 571). The assessment was partial tear of right rotator cuff and Plaintiff received another injection on September 15, 2015. (AR 639). On November 24, 2015 she reported 20% improvement for 2 months after the last injection and rated her pain at 5/10. (AR 624). On exam right shoulder strength was decreased and left shoulder strength normal; Plaintiff received another injection and instructions to ice and do home exercises. (AR 627–28).

Plaintiff was also seen for left shoulder pain. On July 7, 2015 she reported pain in her left shoulder for 4 weeks. (AR 582). X-rays of the left shoulder were normal and the impression was rotator cuff syndrome. (AR 579, 581). An MRI of the left shoulder on July 27, 2015 showed no rotator cuff tear, moderate supraspinatus and infraspinatus insertional tendinosis with interstitial fissuring, biceps tendon with mild proximal tendinosis, mild to moderate acromioclavicular joint osteoarthritis, and findings suggestive of mild

subacromial/subdeltoid bursitis. (AR 577–78).

On January 4, 2016 Plaintiff was seen for a rheumatology consult and reported joint pain for many years and pain in the ankles, low back, neck, and shoulders. (AR 698). She was using ibuprofen for pain which did not help much and did not tolerate codeine or Tramadol in the past. The assessment was primary generalized osteoarthritis and dorsalgia, unspecified. (AR 700). The doctor noted "not much evidence of active inflammatory arthritis in the joints" and a "minimally positive rheumatoid factor" and recommended x-rays and referral to a pain specialist if imaging showed significant osteoarthritis. X-rays of the cervical spine showed mild C5-C6 degenerative disc disease and incidental longus colli calcific tendinosis. (AR 704). X-rays of the right foot showed severe right ankle joint osteoarthritis with disuse osteopenia and no evidence of inflammatory arthritis. (AR 705). X-rays of hands showed mild DIP joint osteoarthritis of the index and long fingers bilaterally and no evidence of inflammatory arthritis. (AR 706). X-rays of the lumbosacral spine showed moderate lower lumbar spine degenerative disc disease and normal sacroiliac and hip joints. (AR 707).

On October 12, 2016 Plaintiff reported right calf pain and muscle cramps for 5 years. (AR 745). She was referred to her orthopedist for follow-up and prescribed cyclobenzaprine for muscle spasms. (AR 748).

In 2017 Plaintiff was treated for low back pain at Southwest Sports and Spine. On February 1, 2017 she reported low back pain for many years, worsening over the past few months, pain radiating to thighs and knees, worse on the left. Plaintiff rated her pain 8–9/10, constant and sharp, stated ibuprofen and physical therapy did not help, and pain was worse with standing, prolonged sitting, and extension-based activities. The assessment was lumbago; spinal enthesopathy, lumbar region; spondylosis without myelopathy or radiculopathy, lumbar region; and radiculopathy, lumbar region. (AR 710). Plaintiff was referred for an MRI and prescribed Norco. The MRI showed L3–4 right lateral disc protrusion presses on the right L4 nerve root, no stenosis; L4–5 degenerative disc disease bulge with prominent epidural fat contributing to mild central stenosis, neural foramina are

patent; and L5–S1 central disc protrusion with a left paracentral component, no stenosis. (AR 712–13). Plaintiff received an injection on February 27, 2017. (AR 714–17). On March 14, 2017 she reported 20–30% relief. (AR 720). Plaintiff received another injection on April 6, 2017. (AR 721– 24).

B.  Examining Physicians

Plaintiff saw Dr. Jerome Rothbaum on March 7, 2012 for a consultative examination. (AR 546). She reported problems with her right foot following a car accident in 2006 and a 7-year history of back pain. (AR 546–47). Dr. Rothbaum's impression was right ankle fracture 2006, Achilles tendinitis in the right leg, and low back pain (appears to be primarily myofascial). (AR 548). He opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently due to her ankle and low back pain; could stand and walk a total of 3–4 hours per day, 1 hour at a time, with a 5 minute break due to her ankle fracture and tendinitis; had no restrictions on sitting; and had no limitations on reaching, handling, fingering, or feeling. (AR 549–50).

Plaintiff saw chiropractor Noel Shaw on August 7, 2017 for an evaluation. (AR 773). Her presenting symptoms were low back pain, hip and leg pain, right ankle pain and weakness, neck pain radiating into shoulders, restriction of movement of cervical spine, shoulder pain radiating into arm and wrists, numbness and tingling in right hand, right elbow and wrist pain, mid back pain, fatigue, anxiety, and depression. Plaintiff stated she felt worse after any activity, that she could not do activities requiring torso flexion such as dishes, vacuuming, or mopping, or extended sitting, walking, standing, traveling, or bending. She reported minor temporary relief from ibuprofen but her pain is always present. Shaw completed a physical residual functional capacity assessment and opined that Plaintiff had the following restrictions: stand 2 hours or less, sit 15–30 minutes without needing to change positions, walk less than 1 block without needing to rest, lift and carry 10 pounds occasionally, never lift and carry 20 pounds, occasionally reach, never perform fine manipulation, grasp occasionally, never kneel, stoop, or crouch, alternate sitting/standing every hour, and would be unable to work more than 5 days/month due to

physical conditions. (AR 776).

C.    State Agency Physicians

At the initial disability determination level, Dr. Martha Goodrich opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk 6 hours in an 8-hour workday, sit more than 6 hours, and do unlimited pushing/pulling. (AR 217). She also limited Plaintiff to occasional overhead reaching with no handling/fingering restrictions. (AR 218–19).

On reconsideration, Dr. Carol Hutchinson limited Plaintiff to standing/walking 4 hours per day due to Plaintiff's complaints, ankle exams, and moderate degenerative arthritis. (AR 236).

D.    Plaintiff's Testimony

On a Disability Report dated September 19, 2014, Plaintiff reported problems with her right foot, back, knees, and hips, and difficulty standing for a long time. (AR 381).

On a Function Report dated August 6, 2015 Plaintiff stated that the weakness in her hands limited her ability to lift and carry and that the problems with her back limited her walking, lifting, and bending abilities. (AR 387). She described her daily activities as taking a shower and taking her daughter and grandsons to appointments. (AR 388). Her hobbies are watching TV and playing games on her phone. (AR 391). She takes care of pets with help from her husband and father. (AR 388). Plaintiff reported difficulty with dressing, bathing, doing her hair, and shaving; she can't run or walk a lot; and her hands and arms start to hurt when she writes. (AR 389). She cooks easy meals but her husband does a lot of the cooking and most of the cleaning because it would take her all day to clean the bathroom. (AR 389–90). Plaintiff goes out every day, drives, and shops in stores. (AR 390). Her illness affects her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and use her hands. (AR 392). She can walk for an hour then rests seated for an hour.

On a Function Report dated January 1, 2016 Plaintiff state she could not stand or sit for a long time, could not lift, and could not do office work because she only completed the 7th grade. (AR 443). Her husband does all the cooking and cleaning because it hurts

her to mop, sweep, and do the dishes. (AR 444). She must sit to dress, shave, and do her hair; makes sandwiches and frozen meals; does laundry and sits to fold the clothes; and needs help from her husband and father to clean. (AR 445–46). Her hobby is watching tv, but she moves around to get comfortable. (AR 447). Plaintiff reported she could walk for 30 minutes then needed to rest for 1–2 hours, standing for 30 minutes hurt, and it was hard to reach because of her foot. (AR 448).

At the hearing before the ALJ, Plaintiff testified that she could not work because she could not handle standing or sitting for a long period of time. (AR 173, 178). She could not sit through a two-hour movie and had to twist and turn to get comfortable when watching tv, but could sit for about an hour. (AR 173–74). She plays games with her five-year-old granddaughter, but she can't sit on the floor with her and can't pick up her ten-month-old grandson. (AR 175).

Plaintiff testified that she had pain in her right shoulder and neck and had cortisone shots in both shoulders. (AR 179). The left shoulder has not bothered her since the shot. She has arthritis in both hands and numbness in her right hand; it's hard for her to do a lot of writing and it took her several days to complete the social security paperwork. (AR 183). She has trouble opening jars and bottles, does not wear shoes with ties, must sit down to get dressed, and it's hard for her to sweep, mop, vacuum, and stand to do dishes. (AR 184). Her husband does the chores and cooking and helps make the bed. (AR 185). Plaintiff stated she has pain in her back that goes into her knee and sometimes her foot. (AR 186). She spends her days with her grandchildren and watching tv. (AR 186). She does not take care of the grandchildren because her daughter lives with her.

E.    Vocational Testimony

At the hearing before the ALJ, Mary Jesko testified as a vocational expert. (AR 189). She classified Plaintiff's past work as a shuttle van driver and as a house keeper as medium and semi-skilled. (AR 191).

The ALJ asked Jesko to assume an individual with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours in an

8-hour workday; sit more than 6 hours; unlimited pushing and pulling; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; unlimited balancing; frequently stoop, kneel, and crouch; occasionally crawl; and limited to occasional overhead reaching. (AR 191–92). Jesko testified that such a person could not perform either of Plaintiff's past jobs. (AR 192). Jesko stated such a person could sustain light jobs such as textile assembler, gluer, and booth cashier being on her feet for 4 hours a shift because the jobs could be performed primarily sitting or standing. Jesko further stated that the textile assembler and gluer positions had reasoning, math, and language requirements of level 1. (AR 193). Jesko also stated that Plaintiff would have transferrable skills to a chauffeur position, and that she could do that job with the restriction of only being on her feet for 4 hours because it was primarily sitting. (AR 194).

For the second hypothetical, the ALJ changed the limitation to sitting for 1 hour at a time with a need to get up and move around for about 10 minutes before resuming sitting. (AR 196–97). Jesko testified that such a person could not do any of the three jobs. (AR 197).

On questioning by Plaintiff's attorney, Jesko testified that if Plaintiff were limited to occasional handling with her right hand she could not perform the bench jobs. (AR 199). Plaintiff could also not perform the jobs if she was limited to lifting 10 pounds occasionally.

F.   ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative joint disease and degenerative disc disease. (AR 130). The ALJ found that Plaintiff's obesity and right hand impairment were non-severe because there was insufficient evidence to conclude that they imposed more than minimal limitations on Plaintiff's ability to perform work-related activities for a period of twelve consecutive months. (AR 131).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 133). The ALJ specifically found that Plaintiff's activities of daily

living were not consistent with her allegations of complete disability. (AR 136).

The ALJ gave significant weight to the consultative examiner Dr. Rothbaum's opinion because it was consistent with the medical evidence of record, because Dr. Rothbaum was a qualified expert who had the opportunity to evaluate, test, observe, and examine Plaintiff, and because his opinion was consistent with his findings. (AR 134).

The ALJ also gave significant weight to state agency physician Dr. Goodrich's opinion because it was consistent with the medical evidence and because Dr. Goodrich is a qualified expert with special knowledge of the agency rules and regulations. (AR 134–35). However, the ALJ noted that he gave more weight to Dr. Hutchinson's opinion because it was more recent and based on more evidence. (AR 135).

The ALJ gave great weight to state agency physician Dr. Hutchinson's opinion because it was consistent with the medical evidence and because Dr. Hutchinson is a qualified expert with special knowledge of the agency rules and regulations. (AR 135).

The ALJ gave partial weight—that of a lay witness—to examining chiropractor Noel Shaw's opinion because he was not an acceptable medical source. (AR 135).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: stand/walk for 4 hours in an 8-hour work day; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently stop, kneel, and crouch; occasionally crawl; and limited to occasional overhead reaching bilaterally. (AR 131). The ALJ found that Plaintiff was unable to perform her past work as a shuttle van driver, but that she could perform other work existing in significant numbers in the national economy such as textile assembler and gluer. (AR 136–37). The ALJ therefore concluded Plaintiff was not disabled. (AR 137).

### III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment

1  meets or equals the requirements of a listed impairment; and (4) the claimant's RFC
2  precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
3  At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC
4  to perform other work that exists in substantial numbers in the national economy. *Hoopai*
5  *v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the
6  claimant "disabled" or "not disabled" at any point in the five-step process, she does not
7  proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

8  The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
9  1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's
10  findings are based on legal error or are not supported by substantial evidence in the record
11  as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in
12  42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by
13  substantial evidence, shall be conclusive." Substantial evidence "means such relevant
14  evidence as a reasonable mind might accept as adequate to support a conclusion,"
15  *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a
16  mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The
17  Commissioner's decision, however, "cannot be affirmed simply by isolating a specific
18  quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)
19  (citations omitted). "Rather, a court must consider the record as a whole, weighing both
20  evidence that supports and evidence that detracts from the Secretary's conclusion."
21  *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

22  The ALJ is responsible for resolving conflicts in testimony, determining credibility,
23  and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When
24  the evidence before the ALJ is subject to more than one rational interpretation, [the court]
25  must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190,
26  1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must
27  resolve conflicts in evidence, and if the evidence can support either outcome, the court may
28  not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019

(9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Discussion

Plaintiff argues that the ALJ applied the "light" Medical-Vocational Rules when the "sedentary" rules more properly applied, which would have resulted in a finding that Plaintiff was disabled. Plaintiff also argues that the ALJ failed to account for any limiting effects of Plaintiff's right hand impairment in the RFC assessment and that the ALJ failed to give legally sufficient reasons to discount Plaintiff's subjective symptom testimony and chiropractor Noel Shaw's opinion. Plaintiff argues that the Medical-Vocational Rules direct a finding of disabled in this matter, and in the alternative requests that the Court remand this matter for further administrative proceedings.

The Commissioner argues that the ALJ properly evaluated Plaintiff's subjective symptom testimony and gave germane reasons to discount Shaw's opinion. The Commissioner further argues that the ALJ properly relied on the VE testimony to find Plaintiff not disabled at Step Five.

The Court finds that the ALJ failed to provide legally sufficient reasons to discount Plaintiff's subjective symptom testimony and chiropractor Noel Shaw's opinion. These errors impacted the ALJ's RFC assessment and the hypotheticals posed to the VE. Consequently, the errors were not harmless because they ultimately impacted the ALJ's Step Five nondisability finding. Because questions remain regarding whether in fact Plaintiff was disabled within the meaning of the SSA during the relevant time period, and because Plaintiff's subjective symptom testimony is best reassessed in light of the record as a whole, the Court finds that remand for further administrative proceedings is appropriate.[4]

A. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount her subjective testimony by misconstruing her activities of daily living ("ADL"). Plaintiff further states that the ALJ did not specify which ADL she found inconsistent with Plaintiff's subjective complaints, and that the ALJ failed to provide another valid reason to discount her testimony, other than suggesting that her complaints were inconsistent with the medical record.

"An ALJ's assessment of symptom severity and claimant credibility is entitled to great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015) (internal quotations and citations omitted).[5] This is because "an ALJ cannot be required to believe

---

[4] Because the Court will remand this matter for further administrative proceedings on an open record, the Court declines to address the other issues raised by Plaintiff in her appeal.
[5] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." *Id*. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." *Id*. This ruling is consistent with the previous policy and clarifies rather than changes existing law. Under either ruling, the ALJ is required to consider the claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency." *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an evaluation of claimant's testimony and contain the same factors for consideration).
    "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."

every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation omitted).

While questions of credibility are functions solely for the ALJ, this Court "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Comm'r Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Further, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms

---

*Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

and how they affect him if those statements are *inconsistent with or contradicted by* the objective medical evidence." *Robbins*, 466 F.3d at 887 (emphasis in original). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations and citations omitted).

The ALJ did not make a finding that Plaintiff was malingering; therefore, to support his discounting of Plaintiff's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. Here, the ALJ stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 133). The ALJ specifically found that Plaintiff's ADL were "not consistent with her allegations of complete disability" because she was "able to bathe, dress, groom, toilet and care for her personal needs without assistance," and because she could prepare simple meals and feed herself, care for pets, do chores, drive and take her children and grandchildren to appointments, go out unaccompanied, and shop for groceries. (AR 136

"There are two grounds for using daily activities to form the basis of an adverse credibility rating. The first is when the activities contradict prior testimony. The second is when the activities meet a threshold for transferable work skills." *Strutz v. Colvin*, 2015 WL 4727459, at *5 (D. Or. Aug. 10, 2015); *see also Orn v. Astrue*, 495 F.3d at 639 ("[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting.'" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Molina*, 674 F.3d at 1112–13 (ADL "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a totally debilitating impairment"). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities

warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Plaintiff reported that she spends her days watching TV and driving her daughter and grandchildren to appointments. She prepares simple meals, but her husband does most of the cooking and cleaning because standing hurts her back and foot and it is difficult for her to lift, bend, squat, and reach. Plaintiff also reported that she needed to sit while dressing, doing her hair, and shaving, and that she could not get into the tub. The ALJ did not explain how these daily activities undermine Plaintiff's subjective symptom testimony regarding her pain and limitations. Further, "there is neither evidence to support that [Plaintiff's] activities were 'transferrable' to a work setting nor proof that [Plaintiff] spent a 'substantial' part of h[er] day engaged in transferrable skills." *Orn*, 495 F.3d at 639. Plaintiff's daily activities of simple meal preparation, driving to appointments, and watching TV "are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace," especially when taking into consideration

her reported difficulties with sitting or standing for long periods of time, lifting and carrying restrictions, and difficulty writing. *Id*. Plaintiff's daily activities, as both she and her husband described them, do not contradict her other testimony, nor did the ALJ explain how Plaintiff's daily activities allegedly conflict the medical and other evidence of record. "Accordingly, the supposed inconsistencies between [Plaintiff's] daily activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit [her] testimony regarding her [] impairments." *Garrison*, 759 F.3d at 1016.

In sum, the undersigned finds that the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Further, this error was not harmless. Had the ALJ properly considered Plaintiff's testimony regarding her symptoms and limitations, it would have also impacted the ALJ's RFC finding and the hypothetical posed to the VE. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (finding VE opinion could not be relied on where ALJ failed to provide clear and convincing reasons to reject claimant's testimony and did not include claimant's subjective limitations in the RFC). Thus, this error was harmful because it affected the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115.)

## B. <u>Medical Testimony</u>

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "Courts afford the medical opinions of treating physicians superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015).

"While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

Here, Plaintiff argues that the ALJ failed to give reasons germane to the witness to discount the opinion of Noel Shaw, a chiropractor who evaluated Plaintiff. While Shaw is not considered an acceptable medical source, opinions from other sources must still be evaluated and the ALJ may discount their testimony only by giving reasons germane to each witness. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered acceptable medical sources."). Nurse practitioners, physician assistants, and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). Pursuant to SSR 06-03p, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Thus, as one of Plaintiff's medical providers, Shaw qualifies as an "other source" that can provide evidence about the severity of Plaintiff's impairments and how they affect her ability to work, and the ALJ was required to evaluate Shaw's opinion and "give[] reasons germane to each witness" for discounting the opinion. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1513(a). The Court finds that the ALJ failed to meet that standard here.

The ALJ summarized Plaintiff's complaints to Shaw, the findings on examination, Shaw's diagnoses of Plaintiff's conditions, and Shaw's RFC assessment. (AR 135). The ALJ then gave Shaw's opinion "partial weight—that of a lay witness since he is not an acceptable medical source pursuant to the rules and regulations of the [SSA]." (AR 135). The Court finds that this was not a legally sufficient reason to assign reduced weight to Shaw's opinion. The fact that Shaw is a chiropractor and therefore not an acceptable medical source is not a sufficient reason to discount his opinion because the ALJ was still

required to evaluate the opinion according to the requirements set out in 20 C.F.R. § 404.1527(c). *See* 20 C.F.R. § 404.1527(f) (opinions from sources who are not acceptable medical sources are considered using the same factors that are applied to opinions from acceptable medical sources). Thus, in determining what weight to afford Shaw's opinion, the ALJ was required to consider (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of Shaw's opinion; (3) the consistency of the opinion and the record as a whole; (4) whether Shaw is a specialist; and (5) other factors that would support or contradict Shaw's opinion. The ALJ wholly failed to address these factors here. *See Revels*, 874 F.3d at 666–67 (ALJ erred by failing to state germane reasons to reject physical therapist's FCE in part where although physical therapist only examined claimant once, he did so for 3 ½ hours, extensively reviewed medical records from other doctors, and produced a 9-page report). The ALJ failed to cite to any specific reason other than Shaw being a "lay witness" and did not point to any information in the record that contradicted Shaw's opinion. While the Commissioner is not required to "discuss *all* evidence" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted). Further, though Shaw is not considered an acceptable medical source, as an examining provider he is certainly in a better position to evaluate Plaintiff's conditions and functional limitations than the state agency reviewing physicians who never examined nor treated Plaintiff. *See Potter*, 2015 WL 1966715 at *13; *Garrison*, 759 F.3d at 1012.

In sum, the Court finds that the ALJ erred by failing to provide legally sufficient, germane reasons to assign reduced weight to Shaw's opinion. Particularly in a case such as this where there are no opinions from Plaintiff's treating physicians recommending specific limitations on her ability to work, Shaw's opinion may provide the best estimation of Plaintiff's physical capabilities and workplace limitations. However, the ALJ's RFC

assessment fails to incorporate most of Shaw's recommendations. This error is not harmless because it affected the ALJ's discounting of Plaintiff's subjective symptom testimony and the hypotheticals posed to the VE, and thus the ultimate nondisability finding at Step Five. *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) ("a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Accordingly, the Court finds that this matter should be remanded for further administrative proceedings to reassess Shaw's opinion and continue the five-step sequential evaluation process.

## V.    Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v.*

*Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brow-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds remand for further administrative proceedings is appropriate. The ALJ erred by failing to provide legally sufficient, germane reasons for assigning Shaw's opinion reduced weight. The ALJ also erred by failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. *See Hill v. Astrue*, 698 F.3d 1153, 1162–63 (9th Cir. 2012).

This Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC and subjective

symptom testimony are best reassessed in consideration of the entire record, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. Additionally, the ALJ is required to consider all of Plaintiff's alleged impairments, whether severe or not, in the assessment on remand. SSR 86–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'"). "Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1142. The Court expresses no view as to the appropriate result on remand.

**VI.    Conclusion**

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits. The Clerk of Court shall enter judgment accordingly and close its file on this matter.

Dated this 15th day of January, 2020.

Eric J. Markovich
United States Magistrate Judge